DA 11-0658

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 307

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JOSEPH WILLIAM GEREN, SR.,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 09-102
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Kevin S. Brown, Paoli & Brown, P.C., Livingston, Montana

    For Appellee:

        Steve Bullock, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Brett D. Linneweber, Park County Attorney, Livingston, Montana

Submitted on Briefs:  August 22, 2012

Decided:  December 26, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Joseph Geren appeals his conviction in the District Court for the Sixth Judicial District, Park County, of ten felony sexual offenses.  We affirm.

¶2     Geren raises three issues on appeal which we have restated as follows:

¶3     1.   Whether the District Court abused its discretion when it failed to conduct a hearing on Geren's allegations that some jurors slept through critical portions of the trial testimony.

¶4     2.   Whether Geren was subjected to double jeopardy when he was convicted of both incest and attempted incest arising out of what he asserts was a single transaction.

¶5     3.   Whether the District Court committed structural error when it failed to arraign Geren on an amended charge.

## Factual and Procedural Background

¶6     On March 31, 2011, a jury found Geren guilty of one count of Incest and one count of Attempted Incest involving his daughter, T.G.; four counts of Incest and one count of Sexual Intercourse Without Consent involving his step-daughter, K.D.; and two counts of Sexual Intercourse Without Consent and one count of Attempted Sexual Intercourse Without Consent involving his sister-in-law, S.H.

¶7     T.G. was 16 years old when the offenses in question occurred.  At that time, she was living with Geren, her stepmother, her stepsister K.D. who was also 16 years old, and two younger siblings.  T.G. testified at trial that she and Geren went out hunting on a Saturday afternoon in late November 2009.  While they were driving in his truck, Geren told T.G. that her mother had told him that she had fantasies about Geren and T.G. having

2

sex. As a result, Geren said he dreamed about having sex with T.G. T.G. testified that this discussion "weirded" T.G. out, but she tried to act normal.

¶8 T.G. further testified that later, as Geren and T.G. were hunting, Geren reached behind T.G., grabbed her on her butt, and asked her to kiss him. T.G. pushed him off, told him to kiss himself, and got back in the truck. Geren also got in the truck. He told T.G. that he wanted to "make out" with her. He grabbed T.G. by the arms and forced his tongue into her mouth. T.G. kept telling him it was "weird," but Geren told her it was not and that "the father/daughter thing is just a label." Geren stuck his hand down T.G.'s shirt, inside her bra, and touched her breast. Geren then removed his hand from her breast and tried to touch her on the outside of her pants in the front. When T.G. said she was having her period, Geren backed off.

¶9 T.G. stated that, sometime later, Geren asked her if he could "go down" on her and if she would "go down" on him. Geren said it would not take him long because he was "ready." Geren repeatedly asked T.G. to have oral sex with him, tried to kiss her, and tried to put his hand down her pants. T.G. kept protesting that it was not right and that Geren should take her home. Finally, T.G. told Geren that it was getting dark and that Geren's wife (T.G.'s stepmother) would be wondering why they were not home. While Geren was driving T.G. home, he told her that she did not need to tell anybody about what happened, that if she wanted to do it again he would "take care" of it, and that she could have unrestricted freedom on the weekends if she complied with his requests.

¶10 The following day, T.G.'s family had a gathering to celebrate her little brother's birthday. S.H., the 16-year-old sister of T.G.'s stepmother, attended the party. At one

3

point during the party, T.G. and S.H. went inside the shed near T.G.'s house, and T.G. told S.H. what Geren had done. S.H. expressed her surprise that Geren would do that to his own daughter. S.H. then confessed to T.G. that one day when S.H. was home sick from school, Geren showed up at S.H.'s house and raped S.H. T.G. begged S.H. not to tell anyone about their conversation.

¶11 A few days after S.H. and T.G. confided in each other, S.H. told her parents and her twin sister, A.H., that both S.H. and T.G. had been sexually assaulted by Geren. The next day at school, A.H. convinced T.G. to talk with the school counselor, Katey Franklin. After relating her encounter with Geren to Franklin, T.G asked to speak with her step-sister, K.D., so Franklin brought K.D. to her office. When T.G. explained to K.D. what was happening, K.D. disclosed that Geren had been sexually abusing her as well.

¶12 K.D. related to Franklin and also testified at trial that Geren made her give him "blow jobs" and "hand jobs." K.D. testified that sometimes Geren put his mouth on her vaginal area or put his fingers inside her vagina. K.D. could not recall exactly how many times this happened, but that it happened at least weekly and continued over several months.

¶13 While K.D., T.G. and A.H. were in Franklin's office, S.H. went looking for her sister. When she found A.H. in Franklin's office and learned what was happening, S.H. disclosed to Franklin that she too had been sexually abused by Geren.

¶14 At trial, S.H. recalled four instances when Geren subjected her to sexual abuse. On the first occasion, Geren was helping S.H. and her father paint S.H.'s room. S.H.

4

testified that when her father left to buy more paint, Geren forced S.H. to perform oral sex on him. She said that Geren ejaculated, and when he was finished, S.H. went into the bathroom and cried. On the second occasion, Geren showed up at S.H.'s house when S.H. was home alone. Geren took S.H. into her bedroom, forced S.H. to undress, and had vaginal intercourse with her. He then ejaculated on S.H.'s bed. On the third occasion, Geren, T.G., and S.H. were supposed to go hunting together, but T.G. decided not go. While alone with S.H., Geren forced her to engage in oral sex. On the fourth occasion, S.H. and A.H. were spending the night with T.G. and K.D. The next morning everyone except Geren left the house to visit another family member without awakening S.H. After everyone else left, Geren went to where S.H. was sleeping and forced her to perform oral sex on him.

¶15   S.H. further testified that Geren threatened that if she told anyone about these incidents, he would tell her parents about the older boy she was dating without her parents' knowledge or approval. S.H. estimated that Geren attempted to have oral sex with her on at least 15 other occasions, and that he would repeatedly unbutton her shirt and try to touch the private parts of her body.

¶16   On December 2, 2009, Detective Tony Steffins with the Park County Sheriff's Office conducted an interview with Geren. During this interview, which Detective Steffins recorded, Geren initially denied having any sexual contact with T.G., S.H., or K.D. Instead, Geren speculated that S.H. had made the accusations against him because he had threatened to tell her parents about the older boy she was dating. He also speculated that T.G. and K.D. made allegations against him because he is strict and runs a

5

"tight ship." However, later in the interview, Geren admitted that he had sexual contact with all three girls.

¶17   Geren was originally charged by Information on December 16, 2009, with two counts of Sexual Assault and one count of Sexual Intercourse Without Consent. On November 8, 2010, the State filed an Amended Information charging Geren with five counts of Incest, two counts of Sexual Intercourse Without Consent, two counts of Sexual Assault, and one count of Attempted Incest. On November 22, 2010, the State filed a Second Amended Information wherein the two counts of Sexual Assault were changed to two additional counts of Sexual Intercourse Without Consent. The State filed a Third Amended Information on February 17, 2011, clarifying the specific subsections of each statute that Geren allegedly violated on all ten counts charged. Geren was arraigned on the Third Amended Information on March 7, 2011. He pled not guilty to all ten counts.

¶18   A jury trial commenced on March 28, 2011. On the third day of trial, the State moved to amend one of the ten counts from Sexual Intercourse Without Consent to Attempted Sexual Intercourse Without Consent. The District Court granted the State's motion over Geren's objection.

¶19   At the close of the State's case, Geren moved to dismiss the charge of Attempted Incest involving T.G. Geren argued that if the jury convicted him of both Incest and Attempted Incest for the incidents with T.G., he would be subjected to double punishment for the same conduct because the attempt to commit incest is included in the offense of incest. The court indicated that if the jury convicted Geren of both offenses, it would consider his argument.

6

¶20    Geren testified in his own defense at trial and denied having sexual contact with any of the girls.  He claimed that he admitted to the offenses in his interview with Detective Steffins because he was scared and he wanted the interview to be over.

¶21    On March 31, 2011, the jury found Geren guilty on all ten counts.  After the jury's verdict, Geren filed a motion for a new trial arguing, among other things, that his convictions for Incest and for Attempted Incest violated his right against double jeopardy because Attempted Incest is a lesser included offense of Incest.  Geren further argued in his motion that a new trial was necessary because several jurors may have been asleep during critical portions of the trial testimony.

¶22    The District Court denied Geren's motion noting that it had not noticed any juror sleeping as Geren alleged, and that Geren's convictions for both Incest and Attempted Incest did not violate double jeopardy principles.  On September 6, 2011, the Court sentenced Geren to Montana State Prison for 15 years, with five years suspended, on each count.  The court ordered that the sentences were to run consecutively.  Geren now appeals the District Court's judgment and sentence.

**Standard of Review**

¶23    This Court reviews a district court's grant or denial of a motion for a new trial for an abuse of discretion.  *State v. Parrish*, 2010 MT 212, ¶ 14, 357 Mont. 477, 241 P.3d 1041 (citing *State v. Clark*, 2008 MT 391, ¶ 20, 347 Mont. 113, 197 P.3d 977).  In order to establish that the court abused its discretion, a defendant must demonstrate that the court acted arbitrarily without conscientious judgment or exceeded the bounds of reason and, further, that the court's abuse of discretion was prejudicial.  *State v. Ariegwe*, 2007

7

MT 204, ¶ 164, 338 Mont. 442, 167 P.3d 815 (citing *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45; § 46-20-701(1), MCA).  We also review a district court's decision on whether to allow the amendment of an information for an abuse of discretion. *State v. Scheffer*, 2010 MT 73, ¶ 34, 355 Mont. 523, 230 P.3d 462 (citing *State v. Wilson*, 2007 MT 327, ¶ 19, 340 Mont. 191, 172 P.3d 1264).

¶24    In addition, determinations regarding double jeopardy protections under § 46-11-410, MCA, present questions of law that we review for correctness.  *State v. Williams*, 2010 MT 58, ¶ 13, 355 Mont. 354, 228 P.3d 1127 (citing *State v. Becker*, 2005 MT 75, ¶ 14, 326 Mont. 364, 110 P.3d 1).

**Issue 1.**

¶25    *Whether the District Court abused its discretion when it failed to conduct a hearing on Geren's allegations that some jurors slept through critical portions of the trial testimony.*

¶26    Geren alleged in his Motion for New Trial that one or more jurors slept while he was testifying, and that he could produce witnesses to that fact.  He asserts on appeal that the District Court should have conducted a hearing into his allegations, and that the court erred in failing to do so.

¶27    The State argues that the District Court properly exercised its discretion when it denied Geren's Motion for a New Trial without a hearing because Geren made only cursory allegations and did not identify the jurors, the witnesses, or why he did not bring this to the court's attention at the time of trial.

¶28    The Sixth and Fourteenth Amendments of the United States Constitution guarantee that criminal defendants receive a "fair trial by a panel of impartial, indifferent

8

jurors." *State v. Kingman*, 2011 MT 269, ¶ 18, 362 Mont. 330, 264 P.3d 1104 (quoting *Hayes v. Ayers*, 632 F.3d 500, 507 (9th Cir. 2011)). Similarly, the Montana Constitution guarantees that in all criminal prosecutions, the accused has a fundamental right to a public and fair trial by an impartial jury. *Woirhaye v. Montana Fourth Jud. Dist. Ct.*, 1998 MT 320, ¶¶ 11, 16, 292 Mont. 185, 972 P.2d 800 (citing Mont. Const. art. II, §§ 24, 26). The question of whether a defendant ultimately received a fair trial in accordance with due process is a question over which this Court exercises plenary review. *Kingman*, ¶ 38.

¶29 Section 46-16-702(1), MCA, provides that "[a] new trial may be ordered by the court without a motion or may be granted after motion and hearing." In addition, § 46-16-702(3), MCA, provides:

> On hearing the motion for a new trial, if justified by law and the weight of the evidence, the court may:
> (a) deny the motion;
> (b) grant a new trial; or
> (c) modify or change the verdict or finding by finding the defendant guilty of a lesser included offense or finding the defendant not guilty.

¶30 Geren interprets the above language to mean that a district court must always conduct a hearing on a motion for a new trial regardless of the claims raised or the evidence presented to support the motion. However, our case law does not support Geren's interpretation of these statutes. In *State v. Billedeaux*, 2001 MT 9, 304 Mont. 89, 18 P.3d 990, and in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815, the district court in each case denied the defendant's motion for a new trial without conducting a hearing.

9

¶31 In *Billedeaux,* the defendant claimed in his motion for a new trial that the court failed to properly instruct the jury on a lesser included offense; allowed the jury to use a flawed verdict form; and failed to grant the defendant's motion to dismiss for lack of sufficient evidence at the close of the State's case. The district court denied the defendant's motion for a new trial after briefing from both parties, but without conducting a hearing. *Billedeaux,* ¶ 22. On appeal, this Court held that the district court did not abuse its discretion in denying defendant's motion. *Billedeaux,* ¶ 28.

¶32 In *Ariegwe,* the defendant claimed in his motion for a new trial that the prosecutor's inaccurate representations of certain scientific evidence during closing arguments had denied the defendant a fair and impartial trial. *Ariegwe,* ¶ 157. Although the district court agreed that the prosecutor had made improper and inaccurate statements in its closing, the court denied defendant's motion without conducting a hearing. The court noted that it had given a curative instruction and that the defendant had not requested any further clarification or curative instructions. *Ariegwe,* ¶ 163. On appeal, we determined that the error was contemporaneously cured by the court's curative instruction, and that the defendant had not demonstrated that the court acted arbitrarily without conscientious judgment or exceeded the bounds of reason in denying the defendant's motion for a new trial. *Ariegwe,* ¶ 168.

¶33 In its order denying Geren's motion for a new trial in this case, the District Court stated that, as part of its duties, it "tries to carefully monitor the jury during the trial." The court further stated:

At no time did the Court ever notice any juror "sleeping" or "dozing." There can be many reasons why a juror may have closed his or her eyes for a short time. The defendant testified early in the afternoon and closing statements were done in mid-afternoon. The Court did not keep the jury late, did not start Court until 9:00 a.m., and took several recesses during the day. It did not appear that any juror was tired by their service.

¶34 The State maintains that Geren raised for the first time, through a motion for a new trial, "a cursory allegation that 'several jurors' may have slept during parts of his testimony." In addition, the State claimed in its brief on appeal, that Geren made "very general allegation[s] of what he might be able to show from unidentified witnesses about an unidentified juror or jurors."

¶35 Contrary to the State's contentions, while Geren did not identify in his Motion for New Trial either the jurors allegedly sleeping or the individuals who allegedly witnessed them sleeping, Geren did identify by name in a footnote in his reply brief in support of his Motion for New Trial, one juror who he claimed "was seen to have her eyes closed" and three individuals who he claimed observed jurors sleeping. However, Geren did not identify how the matter came to his attention, or why he did not bring this matter to the District Court's attention at the time of trial.

¶36 A district court's discretion to grant or deny a motion for a new trial must include the discretion to set the motion for a hearing or to decide the motion on the arguments presented through briefing. In order to establish that the District Court abused its discretion in this case, Geren must demonstrate that the court acted arbitrarily without conscientious judgment or exceeded the bounds of reason, and that the court's abuse of discretion was prejudicial. *Ariegwe*, ¶ 164. Geren has made no such showing here.

11

¶37 Geren's allegations were inconsistent with the District Court's own personal observations. In its order denying Geren's motion, the District Court stated that "[a]t no time did the Court ever notice any juror 'sleeping' or 'dozing.'" The court also pointed out that "[t]here can be many reasons why a juror may have closed his or her eyes for a short time." The trial judge, having been present throughout the course of the trial and having observed the jurors firsthand, is in a better position than we are to determine the validity of Geren's allegations.

¶38 Accordingly, we hold that the District Court did not abuse its discretion when it did not conduct a hearing on Geren's posttrial allegations that some jurors slept through critical portions of the trial testimony.

**Issue 2.**

¶39 *Whether Geren was subjected to double jeopardy when he was convicted of both incest and attempted incest arising out of what he asserts was a single transaction.*

¶40 Geren argues on appeal that his convictions for both Incest and Attempted Incest involving his daughter, T.G., subjected him to double jeopardy because both counts arose from the same transaction. Geren's argument is premised on the theory that anything that happened from the time he and T.G. left the house to go hunting until the time they returned home constituted the same transaction. In addition, Geren maintains that pursuant to § 46-11-410(2), MCA, a defendant may not be convicted of more than one offense if one offense is included in the other.

¶41 Section 46-11-410, MCA, the statute Geren relies on, provides in its entirety:

12

**Multiple charges.** (1) When *the same transaction* may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.

(2) A defendant may not, however, be convicted of more than one offense if:

(a) *one offense is included in the other;*

(b) one offense consists only of a conspiracy or other form of preparation to commit the other;

(c) inconsistent findings of fact are required to establish the commission of the offenses;

(d) the offenses differ only in that one is defined to prohibit a specific instance of the conduct; or

(e) the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of the conduct constitute separate offenses. [Emphasis added.]

¶42 Thus, Geren is correct that a defendant may not be convicted of more than one offense involving the *same* transaction if one offense is included in the other. Geren is also correct that attempted incest is a lesser included offense of incest. To that end, § 46-1-202, MCA, provides:

(9) "Included offense" means an offense that:

(a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(b) *consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged*; or

(c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission. [Emphasis added.]

¶43 The fallacy in Geren's argument is that his convictions for Incest and for Attempted Incest involving T.G. were not based on the same transaction. Rather, they were based on two distinct transactions that occurred during the hunting trip.

13

Consequently, Geren's convictions on these two offenses did not violate double jeopardy principles. The phrase "same transaction" is defined in § 46-1-209, MCA, as follows:

> (23) "Same transaction" means conduct consisting of a series of acts or omissions that are motivated by:
> (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or
> (b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

¶44 The Third Amended Information set forth the facts giving rise to the offenses committed against T.G. as follows:

> COUNT IX: INCEST: That in November of 2009, in Park County, Montana, the Defendant knowingly subjected [T.G.], the Defendant's daughter, to sexual contact without her consent when the defendant he [sic] touched her breast. . . . The conduct occurred in a vehicle.
>
> COUNT X: ATTEMPTED INCEST: That in November of 2009, in Park County, Montana, the Defendant knowingly attempted to subject [T.G.], the Defendant's daughter, to sexual intercourse without her consent when he repeatedly grabbed her, made her kiss him, and attempted to have her conduct both oral sex and vaginal intercourse with him. . . .

¶45 The first transaction involving T.G. occurred when Geren forced his hand inside T.G.'s shirt and fondled her breast. This transaction gave rise to Geren's conviction for Incest. *See* § 45-5-507, MCA ("A person commits the offense of incest if the person knowingly . . . has sexual contact, as defined in 45-2-101, with . . . a descendant . . . ."); § 45-2-101(67), MCA (" ' Sexual contact' means touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely . . . arouse or gratify the sexual response or desire of either party."). When Geren removed his hand from T.G.'s breast and tried to touch her on the outside of her

14

pants in the front, T.G. was able to dissuade Geren from further sexual activity at that moment by telling him that she was having her period.

¶46 The second transaction involving T.G. occurred when, sometime later, Geren grabbed T.G., kissed her, and asked her to engage in oral sex or vaginal intercourse with him. This transaction gave rise to Geren's conviction for Attempted Incest. *See* § 45-4-103, MCA ("A person commits the offense of attempt when, with the purpose to commit a specific offense, the person does any act toward the commission of the offense.").

¶47 We have already recognized that separate transactions can arise from criminal conduct occurring at the same place with the same victim. *See State v. Williams*, 2010 MT 58, ¶ 20, 355 Mont. 354, 228 P.3d 1127. In *Williams*, the State alleged that the defendant entered the bedroom of his girlfriend's thirteen-year-old daughter and tried to rape her. When she tried to escape, the defendant choked her and threatened to kill her if she told her mother. The defendant kissed her, touched her all over her body, and penetrated her vagina with his finger. He blocked the front door of the house after the first attack so she could not leave. When the defendant attempted to accost her a second time, she was able to escape the house and contact the police. *Williams*, ¶¶ 6-7.

¶48 The State charged the defendant in *Williams* with sexual intercourse without consent, sexual assault, assault on a minor, and intimidation based on the first attack against the girl. *Williams*, ¶¶ 6-8. We held on appeal that because the State charged the defendant only on the basis of that first attack, § 46-11-410(2)(a), MCA, precluded the

defendant's convictions for both sexual intercourse without consent and the lesser included offense of sexual assault. *Williams*, ¶ 30.

¶49 Nevertheless, we pointed out in our decision in *Williams* that although the State only charged the defendant for the first attack on the girl, the information filed against the defendant also mentioned a second attempted attack as the girl tried to leave the house. Thus, we stated that "[t]his second attempted attack could have formed the basis for additional charges that might have altered our discussion of the matter regarding two separate transactions." *Williams*, ¶ 20.

¶50 We conclude that in the case *sub judice*, the State charged and proved two separate and distinct transactions between Geren and T.G. Accordingly, we hold that Geren was not subjected to double jeopardy when he was convicted of both Incest and Attempted Incest for the incidents involving his daughter, T.G.

**Issue 3.**

¶51 *Whether the District Court committed structural error when it failed to arraign Geren on an amended charge.*

¶52 When the State moved, mid-trial, to amend one of the counts of Sexual Intercourse Without Consent to Attempted Sexual Intercourse Without Consent, the District Court did not arraign Geren on the amended charge. Geren now contends that failure to do so constituted structural error warranting reversal. The State asserts on appeal that since the amendment of the Information was an amendment of form and not one of substance, the court was not required to arraign Geren on the amended charge.

16

¶53 The Information in this case was amended four times. Geren was originally charged by Information on December 16, 2009, with two counts of Sexual Assault and one count of Sexual Intercourse Without Consent. On November 8, 2010, the State filed an Amended Information charging Geren with five counts of Incest, one count of Attempted Incest, two counts of Sexual Intercourse Without Consent, and two counts of Sexual Assault. On November 22, 2010, the State filed a Second Amended Information wherein the two counts of Sexual Assault were changed to two additional counts of Sexual Intercourse Without Consent. The State filed a Third Amended Information on February 17, 2011, clarifying the specific subsections of each statute that Geren allegedly violated on all ten counts charged. Count VIII of the Third Amended Information read as follows:

> SEXUAL INTERCOURSE WITHOUT CONSENT: That in the years approximately between 2006 and 2009, in Park County, Montana, the Defendant knowingly subjected [S.H.] to intercourse without her consent when, against her wishes, the defendant made her perform oral sex on him approximately 4 times in addition to the charges in Counts VI-VII. For purposes of this charge (and the rule of unanimity), the State alleges the Defendant's conduct occurred approximately 4 times, and groups all the conduct as a single event upon which the fact-finder must agree all occurred. For statutory specificity purposes, the sexual intercourse without consent was pursuant to Section 45-2-[101](68)(a)(ii), MCA, to knowingly or purposely arouse or gratify the sexual response of the Defendant. For statutory specificity purposes, the lack of consent is based on the victim not consenting to the intercourse, but being compelled to submit by the Defendant using coercion, as specified in Section 45-5-501(1)(a)(ii)(C), MCA. Specifically, the victim, having been previously subjected to the Defendant's sexual assaults from both bribes and threats, was resigned to compliance based on prior bribes and threats from the prior conduct of the Defendant.

17

Geren was arraigned on this Third Amended Information on March 7, 2011, and he pled not guilty to all ten counts.

¶54 On the third day of trial, the State filed its "Motion for Amendment as to Form to Count VIII" wherein the State moved that the language in Count VIII of the Third Amended Information "be amended to indicate the offense (multiple acts grouped as one offense) was attempted rather than completed." The proposed amendment did not change the dates the acts were allegedly committed, the place where the acts allegedly occurred, or the statutes referenced. And, even though S.H. testified at trial that there were actually 15 attempted acts, the State did not request that the number of acts alleged be increased from four to 15. The District Court granted the State's motion to amend over Geren's objection, but did not arraign Geren on this amended charge.

¶55 The information must reasonably apprise the accused of the charges against him so that he has the opportunity to prepare and present a defense. *State v. Scheffer*, 2010 MT 73, ¶ 38, 355 Mont. 523, 230 P.3d 462 (citing *State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, 172 P.3d 1264).

¶56 Section 46-11-205, MCA, provides:

> **Amending information as to substance or form.** (1) The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.
> (2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay

18

and must be given a reasonable period of time to prepare for trial on the amended information.

(3) The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

As set forth in the above statute, if the amendment is to matters of substance, the amendment must be made "not less than 5 days before trial," § 46-11-205(1), MCA, and the defendant must be arraigned on the amended information "without unreasonable delay," § 46-11-205(2), MCA. However, if the amendment is to matters of form, then under § 46-11-205(3), MCA, the court may permit the amendment "at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced."

¶57 Geren relies on this Court's decision in *State v. Spotted Eagle*, 2010 MT 222, 358 Mont. 22, 243 P.3d 402, to argue that his conviction should be reversed because he was never arraigned on the amended charge. In *Spotted Eagle*, the defendant was specifically charged with Partner of Family Member Assault for "purposely or knowingly caus[ing] bodily injury to his partner . . . in violation of § 45-5-206, MCA." After all the testimony was heard and both the State and the defense rested, the State proposed two new jury instructions which the district court allowed to be given to the jury. Both of these instructions, in addition to referring to "bodily injury," also referred to "reasonable apprehension of bodily injury." *Spotted Eagle*, ¶¶ 2-4.

¶58 On appeal, this Court concluded that the District Court erred in giving these instructions because the instructions amended the substance of the charge against the

19

defendant. We determined that the Information plainly stated that the defendant was charged with "caus[ing] bodily injury to his partner" which falls under § 45-5-206(1)(a), MCA. However, "[i]nstructing the jury regarding 'reasonable apprehension of bodily injury,' which falls under subsection (1)(c) of § 45-5-206, MCA, changed the essential elements of the charge against him, replacing bodily injury with reasonable apprehension of bodily injury." *Spotted Eagle*, ¶ 11. We further concluded that because the amendment was substantive, the amendment should have occurred at least five days before trial, and the defendant should have been arraigned on the new charge. *Spotted Eagle*, ¶¶ 13-14 (citing § 46-11-205(1) and (2), MCA). Thus, *Spotted Eagle* is distinguishable from the case *sub judice* because the amendment to the information in *Spotted Eagle* was substantive, while the amendment to the information in the instant case was one of form.

¶59 We stated in *Scheffer*, that an amendment is one of form "when the same crime is charged, the elements of the crime and the proof required remain the same, and the defendant is informed of the charges against him." *Scheffer*, ¶ 38. We further stated that to differentiate amendments of form and substance, we examine "whether an amendment to an information or complaint alters the nature of the offense, the essential elements of the crime, the proofs, or the defenses." *Scheffer*, ¶ 38.

¶60 In *Scheffer*, the State originally charged the defendant with tampering with or fabricating physical evidence. Sometime later, the State moved to amend the charge to attempted tampering with or fabricating physical evidence. *Scheffer*, ¶ 35. We concluded in that case that because the nature of the offense was the same, the essential

20

elements of the crime remained the same, and there was no indication that the proofs or the defenses changed in response to the amendment, the amendment was one of form, not substance. *Scheffer*, ¶¶ 39, 41.

¶61 Geren argues here that *Scheffer* differs from this case because, in *Scheffer*, the district court arraigned the defendant on the amended charge, whereas in Geren's case, the court did not arraign him on the amended charge. Nevertheless, we have previously determined that if an amendment is one of form and not substance, the court's failure to arraign a defendant on an amended charge does not constitute reversible error. *State v. Clark*, 1998 MT 221, ¶ 52, 290 Mont. 479, 964 P.2d 766.

¶62 In *Clark*, the State originally filed an information charging the defendant with two felony counts of criminal possession of dangerous drugs. The information defined the dangerous drugs as methamphetamine. Sometime later, the State moved to amend the information to consolidate the two counts of possession of dangerous drugs, and to change the drug identified in the information from methamphetamine to amphetamine. *Clark*, ¶¶ 8, 43. The district court granted the State's motion to amend, but did not arraign the defendant on the amended charge. After his conviction, the defendant moved to set aside the jury's verdict and to dismiss the amended charge because he was never arraigned on that charge. The district court denied the motion concluding that the amendment of the information was one of form and not one of substance. *Clark*, ¶¶ 11, 44.

¶63 On appeal, this Court affirmed the district court's decision. In doing so, we concluded that although the State altered the information to charge the defendant with

criminal possession of amphetamine rather than methamphetamine, the criminal offense and the elements which the State was required to prove remained the same. To convict the defendant of criminal possession of a dangerous drug, the State bore the burden of proving only that the defendant possessed a dangerous drug as defined by § 50-32-101, MCA. Since both amphetamine and methamphetamine qualify as dangerous drugs under § 50-32-101, MCA, the crime charged, the elements of the crime, and the required proof all remained the same. *Clark*, ¶ 52.

¶64 Based on the foregoing, we conclude that under § 46-11-205(2), MCA, a defendant must be arraigned on any amendment to the information of substance. However, based on that same jurisprudence, we also conclude that under § 46-11-205(3), MCA, a defendant need not be arraigned on any amendment to the information as to form, absent the defendant's desire to change his plea. Under the facts here, the amendment was as to form. The essential elements of the two offenses were the same, and the State had the burden of proving the same elements. The two offenses carry the same sentence. Moreover, Geren denied committing any sexual impropriety with S.H.; he does not assert that he would have continued to plead not guilty to the charge itself, but that he would have changed his plea to guilty on the attempt charge.

¶65 Accordingly, we hold that the District Court did not commit structural error when it did not arraign Geren on the amended charge.

¶66 Affirmed.

/S/ JAMES C. NELSON

22

We Concur:


/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER