FILED

August 25 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0668

DA 13-0668

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 251

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

JOSHUA WAYNE STRONG,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DC 12-087
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Chad R. Vanisko, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Helena,
Montana

          Olivia Norlin-Rieger, Dawson County Attorney, Marvin Howe, Deputy
County Attorney, Glendive, Montana

Submitted on Briefs:  July 15, 2015
Decided:  August 25, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Joshua Wayne Strong appeals an order of the Seventh Judicial District Court, Dawson County, denying his motion to dismiss at least three of four counts of violating an order of protection filed against him. We restate and address the issue on appeal as whether the District Court erred in denying Strong's motion to dismiss based on its determination that Strong's conduct could give rise to multiple offenses.

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In August 2012, Strong was charged with four counts of partner or family member assault against his wife, Jessica, and their minor child. Strong pleaded guilty to two misdemeanor charges of partner or family member assault and one felony charge of partner or family member assault. He was incarcerated at the Dawson County Detention Center pending sentencing. On August 10, Jessica obtained an order of protection from the Glendive City Court, prohibiting all contact between Strong and Jessica, effective until August 10, 2013. Strong did not oppose the order.

¶4 On November 6, 2012, Strong called Jessica four times from the Dawson County Detention Center—at 4:05 p.m., 7:01 p.m., 10:48 p.m., and 10:52 p.m. The Detention Center recorded the telephone calls, and Strong does not dispute that he made them. On November 8, Jessica requested that the order of protection be dismissed so that she could communicate with Strong about child support and their pending divorce.

¶5 On November 14, the State of Montana charged Strong with four counts of violating an order of protection in violation of § 45-5-626, MCA. The first two counts

2

were charged as misdemeanors, and the third and fourth counts were charged as felonies. On February 25, 2013, Strong filed a motion to dismiss all four charges against him or, in the alternative, to dismiss three of the four charges as part of the "same transaction" under § 46-11-410, MCA.

¶6 On April 17, the District Court conducted a hearing on Strong's motion. During the hearing, Strong testified that he understood the order of protection to mean that he "could have no contact with [Jessica] in any way, shape, or form, third party, anything." Strong also testified that he called Jessica after hearing from a mutual friend that Jessica was "going to drop the protection order." Strong admitted that he did not receive a court order indicating that the order of protection was terminated before contacting Jessica. According to Strong, he called Jessica multiple times because they never completed their conversation, and each telephone call was a continuation of the same conversation.

¶7 On April 25, the District Court issued an order denying Strong's motion to dismiss. The court rejected Strong's "same transaction" argument, determining that Strong's four telephone calls did not meet one of the five exceptions to multiple charges for offenses that were part of the same transaction. In reaching this conclusion, the court determined that, under § 45-5-626(1), MCA, "the offense of violating an order of protection is complete when the defendant, with knowledge of the order, violates any of its provisions," and it was within the prosecutor's discretion to charge Strong with multiple offenses.

¶8 After the District Court denied his motion to dismiss, Strong entered into a plea agreement with the State, reserving his right to appeal the court's denial of his motion.

3

The State dropped the fourth count against Strong, and Strong pleaded guilty to two misdemeanor counts and one felony count of violating the August 10, 2012 order of protection. Strong now appeals the District Court's ruling on his motion to dismiss.

**STANDARD OF REVIEW**

¶9 We review de novo a district court's denial of a motion to dismiss. *State v. Zink*, 2014 MT 48, ¶ 9, 374 Mont. 102, 319 P.3d 596 (citation omitted).

**DISCUSSION**

¶10 Under § 46-11-404(1), MCA, the State may charge multiple offenses "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan." Section 46-11-404(3), MCA, provides that the State "is not required to elect between the different offenses set forth in the charging document, and the defendant may be convicted of any number of the offenses charged," unless the offenses charged meet one of five exceptions set forth in § 46-11-410(2), MCA. Relevant to Strong's argument, pursuant to § 46-11-410(2)(e), MCA, a defendant may not be convicted of more than one offense for conduct that is part of the same transaction if "the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of the conduct constitute separate offenses."

¶11 The District Court determined that the four telephone calls constituted conduct that was part of the same transaction, but that the exception set forth under § 46-11-410(2)(e), MCA, did not apply because the underlying statute was not defined to

prohibit a continuing course of conduct. On appeal, the parties dispute whether Strong's telephone calls constitute conduct that is part of the same transaction and, assuming that they do, whether the calls meet the exception under § 46-11-410(2)(e), MCA.[1]

¶12 "Same transaction" means "conduct consisting of a series of acts or omissions that are motivated by . . . a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person . . . ." Section 46-1-202(23), MCA. The State argues that Strong's conduct does not meet the definition of "same transaction," relying on our decisions in *State v. Geren*, 2012 MT 307, 367 Mont. 437, 291 P.3d 1144; *State v. Williams*, 2010 MT 58, 355 Mont. 354, 228 P.2d 1127; and *State v. Goodenough*, 2010 MT 247, 358 Mont. 219, 245 P.3d 14. Strong argues that he committed only one offense or, in the alternative, that the offenses were part of the same transaction and he could be convicted of only one.

¶13 Strong suggests that § 45-5-626(1), MCA, is ambiguous "as to what exactly constitutes a complete offense," and analogizes to the offense of stalking, set forth in § 45-5-220, MCA. He contends that, like stalking, the offense of violating an order of protection is of a continuous nature, particularly where the alleged conduct occurred over the course of the same day. In interpreting a statute, this Court must construe statutory language according to its plain meaning, if possible. *Infinity Ins. Co. v. Dodson*, 2000 MT 287, ¶ 46, 302 Mont. 209, 14 P.3d 487. We do not "insert what has been omitted,"

---

[1] Although, in his opening brief, Strong appears to raise a constitutional argument regarding double jeopardy, his reply brief clarifies that his "argument is statutory and concerns only the fact that he was wrongfully charged with multiple instances of conduct arising out of the same transaction" under §§ 46-1-202(23) and 46-11-410, MCA.

or "omit what has been inserted." Section 1-2-101, MCA. Section 45-5-220(1), MCA, expressly uses the term "repeatedly." By contrast, § 45-5-626(1), MCA, states that an order of protection is violated when a person violates *a* provision, which is a discrete—as opposed to continuous—act. Each telephone call was a violation of the order's no-contact provision and, therefore, each telephone call constituted a separate offense in violation of § 45-5-626, MCA. Further, because the plain language of the statute dictates when an offense is complete, we need not consider Strong's argument regarding application of the rule of lenity. *See Dodson*, ¶ 46 ("[I]f the [statutory] language is clear and unambiguous, no further interpretation is required.").

¶14 Even if his calls were separate offenses, Strong argues that they were part of the same transaction, as defined in § 46-1-202(23), MCA. We agree.

¶15 In *State v. Parks*, 2013 MT 280, ¶ 25, 372 Mont. 88, 310 P.3d 1088, a Montana Securities Act case, we held that a defendant's omissions of material fact during two separate telephone conversations that together gave rise to a victim's investment in the defendant's company constituted the same transaction. In *Parks*, as in this case, the State attempted to rely on *Goodenough*, which we distinguished because the charges in *Goodenough* established "distinct criminal events" of sexual assault and "involved multiple incidents occurring on different days over the alleged time period." *Parks*, ¶ 26 (citing *Goodenough*, ¶¶ 16-18). In *Goodenough*, we held that the Information's

description of the offenses "as a continuing course of conduct" did not "transform those offenses" into a single transaction. *Goodenough*, ¶ 19.[2]

¶16    *Geren* likewise involved distinct instances of sexual abuse. We held there that different sexual acts with the same victim, even though they occurred on the same day, were separate transactions, and Geren could be convicted of both Incest and attempted incest notwithstanding the provisions of § 46-11-410(2)(a), MCA. *Geren*, ¶¶ 45-46, 50. By contrast, in *Williams*, we held that the defendant could not be convicted of sexual intercourse without consent and sexual assault—a lesser included offense—where both charges resulted from a single attack on the victim. *Williams*, ¶ 30. We noted that the outcome may have been different had the State charged an additional offense based on a second attempted attack of the victim during the same encounter. *Williams*, ¶ 20.

¶17    The definition of "same transaction" compels examination of the facts underlying the charged offenses, including the defendant's "motivat[ion] by . . . a common purpose or plan[.]" Section 46-1-202(23), MCA. In this case, Strong's conduct consisted of a series of calls to Jessica motivated by a common purpose of discussing their divorce and custody, resulting in his repeated commission of the offense of violation of an order of protection. Strong's conduct meets the statutory definition of "same transaction." This conclusion, however, does not mean that Strong could not be convicted of multiple offenses arising from this single transaction. "Section 46-11-410, MCA, clearly provides that a defendant may be prosecuted for more than one offense arising from the 'same

_____

[2] We also concluded that, even if his conduct was all part of the same transaction, Goodenough could be convicted of multiple offenses under the express language of § 46-11-410(1), MCA. *Goodenough*, ¶ 25.

transaction,' unless the charges are among those described in subsection (2) of that section." *Goodenough*, ¶ 16. Because "same transaction" is defined as conduct "result[ing] in the repeated commission of the *same offense*," § 46-1-202(23)(b), MCA (emphasis added), the statutes clearly contemplate that a defendant may be convicted for each repeated commission of the same charged offense.

¶18 Strong contends that he meets the exception set forth in § 46-11-410(2)(e), MCA, because his telephone calls each were "part of a single conversation that was an ongoing violation of the same no contact order," and that this "continuing course of conduct was interrupted, and the underlying law does not expressly provide that specific periods of conduct constitute separate offenses."[3]

¶19 Though Strong argues that the calls "were part of the same ongoing conversation," the plain language of § 46-11-410(2)(e), MCA, requires that the offense be "defined to prohibit a continuing course of conduct." Section 46-11-410(2)(e), MCA. Under § 45-5-626(1), MCA, a person violates an order of protection when he or she, "with knowledge of the order, purposely or knowingly violates a provision" of the order. Section 45-5-626, MCA, is not "defined to prohibit a continuing course of conduct" under § 46-11-410(2)(e), MCA. The order of protection required Strong to have no contact with Jessica. Strong testified that he had knowledge of the order and knew that it

---

[3] In his opening brief, Strong states that, because his "alleged conduct meets the definition of 'same transaction,' the prosecution could not charge him with multiple offenses." That argument is contrary to the plain language of §§ 46-11-404 and 46-11-410, MCA, which specifically allow multiple charges for conduct that is part of the same transaction, unless the offense meets one of five exceptions. In his reply brief, Strong clarifies that he actually is arguing that he falls under one of the exceptions.

prohibited any and all contact with Jessica. Strong also said that he believed Jessica was going to ask the court to rescind the order, but he admitted to receiving no indication from the court that the order was rescinded.

¶20 The Dissent argues that Strong may not be convicted of more than one count of violating his order of protection because "one offense is included in the other," Dissent, ¶ 27 (citing § 46-11-410(2)(a), MCA). Strong does not raise this argument on appeal and we decline to address it.[4]

¶21 The Dissent also suggests that the penalties in § 45-5-626(3), MCA, are to be imposed upon successive, rather than simultaneous, convictions. Dissent, ¶ 28. But our precedent suggests otherwise. In *State v. Tichenor*, 2002 MT 311, ¶ 31, 313 Mont. 95, 60 P.3d 454, we held that a prosecutor did not err in charging a defendant simultaneously with two stacking offenses of stalking, the first a misdemeanor and the second a felony. We stated, "Whether a person has committed a prior offense of stalking is a sentencing factor, not an element of the offense of stalking." *Tichenor*, ¶ 31. We rejected the defendant's argument that the second stalking charge should have been dismissed because there was no "prior conviction" upon which to base the felony charge. *Tichenor*, ¶ 31. We noted that "§ 45-5-220, MCA, does not require that there be a prior 'conviction' before the offender receives a felony sentence. Rather, the statute refers to a

---

[4] We note, however, that the definition of "included offense" is not the same as the definition of "same transaction." *Compare* § 46-1-202(9), MCA, *with* § 46-1-202(23), MCA. The District Court analyzed the telephone calls under the elements of "included offense" and determined that Strong could have been found guilty or not guilty on any or all of the charged offenses, as each involved a separate act. *See Goodenough*, ¶ 21.

'second or subsequent *offense.*'" *Tichenor*, ¶ 33 (emphasis in original). Section 45-5-626(3), MCA, uses similar language.

¶22 Similarly, in *Blakely v. Eighteenth Judicial Dist. Court*, 2008 Mont. Lexis 743, at *4 (Nov. 26, 2008), we declined to exercise supervisory control where a defendant was charged with two misdemeanor and five felony counts of indecent exposure in violation of § 45-5-504, MCA, where the felony counts were predicated upon the misdemeanors charged simultaneously. We stated that a stacking provision, making the third or subsequent conviction a felony, "sets out the framework that a sentencing court must use when determining the proper sentence for a [defendant] who has been found guilty of one or more counts of indecent exposure," and "does not preclude a prosecutor from charging the misdemeanor counts as a predicate for the felony counts in the same information." *Blakely*, 2008 Mont. LEXIS 743, at *4. We did not draw significance from the indecent exposure statute's language calling for enhanced penalties on "a third or subsequent conviction." Rather, we concluded:

> Although Blakely contends that the use of the word 'conviction' in § 45-5-504(2)(c), MCA, distinguishes his case from our holdings in *Tichenor* and [*State v.*] *Dasen* [2007 MT 87, 337 Mont. 74, 155 P.3d 1282], we find no limiting language in the statute that precludes the state from charging Blakely with felony indecent exposure. In the event Blakely is convicted of more than two indecent exposure charges, then the District [c]ourt can properly sentence Blakely for the felony charges[.]

*Blakely*, 2008 Mont. LEXIS 743, at *5-6.

¶23 Strong cites dicta in *State v. Lindseth*, 203 Mont. 115, 117, 659 P.2d 844, 846 (1983), warning of potential double-jeopardy issues with charging multiple counts. He argues that, as a matter of public policy, he should not be charged with multiple, stacking

10

offenses due solely to his use of a telephone rather than in-person contact. Strong placed four separate calls. Although he attempts to analogize his conduct to being "in the physical presence of the alleged victim for the entire day" and continuously speaking with her, a better analogy would be Strong knocking on Jessica's door, talking to her, leaving, and repeating the same action three more times. Ultimately, "[c]harging decisions are generally within the prosecutor's exclusive domain, and the separation of powers [doctrine] mandates judicial respect for the prosecutor's independence." *State v. Passmore*, 2010 MT 34, ¶ 46, 355 Mont. 187, 225 P.3d 1229 (quoting *United States v. Carrasco*, 786 F.2d 1452, 1455 (9th Cir. 1986)) (internal quotation marks omitted) (changes in original). Accordingly, we afford prosecutors "broad discretion to determine whether to prosecute an offender and what offense to charge." *Tichenor*, ¶ 26 (citation omitted). In this case, the prosecutor acted within her discretion in charging Strong with four counts of violating the August 10, 2012 order of protection.

## CONCLUSION

¶24 We affirm the District Court's order denying Strong's motion to dismiss.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

11

Justice Patricia Cotter, dissenting.

¶25 I dissent. I would conclude that Strong's conviction of two misdemeanors and a felony for the repeated commission of one offense violates the statutory definition of "same transaction," as well as the spirit and intent of § 45-5-626(3), MCA. I would remand with instructions to vacate all but one misdemeanor conviction.

¶26 The Court concludes at ¶ 17 that "Strong's conduct meets the statutory definition of 'same transaction.'" Section 46-1-202(23)(b), MCA, defines "same transaction" as "conduct consisting of *a series of acts or omissions* that are motivated by . . . a common purpose or plan *that results in the repeated commission of the same offense . . . .*" (Emphasis added.) Thus, by definition, the singular term "same transaction" encompasses the repeated commission of one offense. Strong repeated the commission of one offense when he made four telephone calls within minutes of each other during the same evening.

¶27 The Court concludes at ¶ 19 that because § 45-5-626, MCA, "is not 'defined to prohibit a continuing course of conduct' under § 46-11-410(2)(e), MCA," Strong was properly charged. However, this conclusion cannot be squared with the Court's explicit finding that his conduct constitutes "the same transaction," which by definition incorporates the repeated commission of the same offense. Under § 46-11-410(2)(e), MCA, a defendant may not be convicted of more than one offense if "the offense is defined to prohibit a continuing course of conduct" which a "same transaction" offense plainly does. Moreover, a defendant may not be convicted of more than one offense if "one offense is included in the other" (§ 46-11-410(2)(a), MCA), which is the case here—again, because of the definition of "same transaction." The various statutes here in play cannot be reconciled as neatly as the Court professes to do. "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401

12

U.S. 808, 812, 91 S. Ct. 1056, 1059 (1971) (internal citation omitted). "[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *State v. Goodwin*, 249 Mont. 1, 23-24, 813 P.2d 953, 967 (1991).

¶28 Second, in upholding Strong's conviction of two misdemeanors and a felony, we ignore the spirit and intent of § 45-5-626(3), MCA. This provision of the statute outlines the penalties associated with conviction of an order of protection for a "first offense," and then proceeds to describe the increased punishment for "conviction for a second offense," and "conviction for a third or subsequent offense." The manner in which the statute is constructed—separating one conviction from another—clearly suggests that the penalties are to be imposed upon successive convictions for second offenses and not simultaneous convictions arising out of "the same transaction" as here. We err in ignoring the evident intent of this statutory language. Respectfully, *Tichenor* is of no assistance to the Court because, while the two stalking offenses in that case were charged simultaneously, the conduct supporting the two offenses occurred over two wholly separate time frames. One count of stalking was charged for 69 phone calls over five days, and the second felony count arose from 50 phone calls that took place over a five-day period a week later and after the defendant had been arrested. These offenses plainly did not arise out of "the same transaction." As the Court observed, Tichenor's conduct "was broken not merely by . . . arrest . . . but also by time . . . and by the intensity of the conduct" that occurred after the defendant's intervening arrest. *Tichenor*, ¶ 49. Thus, the second stalking charge in *Tichenor* genuinely arose out of a "second offense" and second transaction, which is not the case here.

¶29 Finally, though the Court is correct that prosecutors have broad discretion to determine whether and to what extent to prosecute an offender (Opinion, ¶ 22), this prosecution and

13

Strong's conviction of a felony was overzealous. The facts here are undisputed: The phone calls occurred on November 6, 2012, after Strong was told by a mutual friend that Jessica intended to drop the order of protection, and indeed she did so two days later because she sought communication with Strong concerning child support and their pending divorce, the very subject of their telephone discussions of November 6. Unlike the situation in *Tichenor*, the victim here did not seek Strong's prosecution; rather, the charges were brought because the calls had been recorded at the detention center. Unlike the situation in *Tichenor*, this victim was neither harmed nor offended by Strong's phone calls. A conviction of multiple misdemeanors and a felony under these circumstances is in my judgment wholly unjustifiable.

¶30    For the foregoing reasons, I dissent.

/S/ PATRICIA COTTER

Justice Laurie McKinnon joins the dissent.

/S/ LAURIE McKINNON

14