DA 12-0378

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 100

CHS, INC.,

      Plaintiff and Appellant,

  v.

MONTANA STATE DEPARTMENT OF REVENUE,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DV 10-133, DV 10-2080
Honorable Susan P. Watters and Honorable Gregory R. Todd, Presiding Judges

COUNSEL OF RECORD:

      For Appellant:

            Jared M. Le Fevre, Jon Dyre, James P. Site, Crowley Fleck PLLP, Billings, Montana

      For Appellee:

            Derek R. Bell, Brendan R. Beatty, Special Assistant Attorneys General, Montana Dept. of Revenue, Helena, Montana

Submitted on Briefs:   February 6, 2013
Decided:   April 16, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     CHS, Inc., asked the Thirteenth Judicial District Court, Yellowstone County, for a declaratory judgment that the Montana Department of Revenue (DOR) used improper or illegal methods of assessing CHS's Montana properties for property tax purposes in 2009 and 2010.  The court granted summary judgment for DOR on CHS's claims, ruling that the substantive arguments must be presented to the appropriate administrative tax appeal boards.  CHS appeals.  We affirm.

¶2     CHS sets forth three issues on appeal:

¶3     1.  Is the CHS challenge to the methods and procedures of assessment used by DOR to assess CHS's property within the scope of declaratory judgment actions that may be brought directly in a Montana district court under § 15-1-406, MCA, without first appealing to administrative tax appeals boards?

¶4     2.  Is the CHS claim that DOR violated state law when it failed to equalize its valuation of CHS's property with similar properties within the scope of declaratory judgment actions that may be brought directly in a Montana district court under § 15-1-406, MCA, without first appealing to administrative tax appeal boards?

¶5     3.  Was DOR's assessment of CHS's property made too late for tax year 2009?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     CHS is a Minnesota corporation licensed to do business in Montana.  This case relates to state property taxes assessed on CHS's coking refinery in Laurel, Montana, and on its petroleum marketing terminals in Gallatin and Missoula Counties.

¶7    As part of Montana's state property tax appraisal process, CHS must submit an annual Property Reporting Form to DOR.  In 2009, CHS requested two separate extensions of time to return its Property Reporting Form, and DOR granted those extensions.  On May 29, 2009, two months after the second agreed-upon extension deadline, CHS notified DOR that certain figures it had reported were in error and required adjustment.

¶8    DOR issued its original 2009 assessment of CHS's property on or about August 22, 2009.  CHS requested an informal review of the 2009 assessment notice, which is the first step in protesting a tax assessment under § 15-7-102(3), MCA.  Following the informal review, DOR issued a revised assessment in January of 2010.

¶9    CHS remained dissatisfied with the 2009 assessment of its property.  An aggrieved taxpayer who is not satisfied by the results of informal review with DOR may continue the administrative appeal process by appealing to the county tax appeal board, the State Tax Appeal Board (STAB), and, eventually, petitioning for judicial review of the administrative decisions.  *See* §§ 15-2-301 through -303, 15-7-102(3) and (6), and 15-15-101 through -104, MCA.  In addition, § 15-1-406(1)(a), MCA, allows an aggrieved taxpayer to bring a declaratory judgment action directly in a district court to establish that an administrative rule or method or procedure of assessment or imposition of tax adopted or used by DOR is "illegal or improper."

¶10   CHS paid its 2009 property taxes under protest and then pursued both administrative review and the declaratory judgment option for challenging its property tax assessment.   It filed this declaratory judgment action and, contemporaneously, filed

appeals with the county tax appeal boards in Yellowstone, Gallatin, and Missoula Counties. In 2010, CHS again requested an informal review of its property tax assessment with DOR, and then later filed a second declaratory judgment action, challenging DOR's assessment of its property taxes for tax year 2010. The two declaratory judgment actions are consolidated for purposes of this appeal. The county tax appeal boards have stayed the administrative proceedings before them, pending the outcome of this action.

¶11 DOR filed a motion asking the District Court to grant it summary judgment. DOR argued that CHS had failed to present facts stating a claim under § 15-1-406, MCA, and that the types of challenges being made by CHS must first be presented to the administrative tax appeal boards provided for under Montana statutes. In addition, DOR requested summary judgment on CHS's claims that DOR had failed to equalize CHS's properties with similar properties or to timely assess the property under the statutory deadline contained in § 15-8-201, MCA.

¶12 In support of its motion for summary judgment, DOR filed a 10-page affidavit by its appraiser, Seth Carlson. Carlson averred that he used a cost approach to valuation of the property, making substantial deductions for physical depreciation and functional obsolescence, but that he could not identify any economic obsolescence. He considered performing an income approach to valuation, but ultimately did not do so because he lacked the necessary income and expense information from CHS.[1] Carlson also

---

[1] The Property Reporting Form did not require disclosure of income or expense information, and CHS declined DOR's requests that it provide such information.

4

considered employing a market data approach to valuation, but he did not identify any particular sales that were comparable or useful. Carlson stated that, upon CHS's request for informal review with DOR, he reviewed and considered information that CHS provided from its outside appraisers, Duff and Phelps. However, "[f]or a variety of reasons," Carlson determined the Duff and Phelps analysis could not serve as a legitimate basis to modify or adjust the market value of CHS's property.

¶13 In response to the motion for summary judgment, CHS provided the District Court with an affidavit from a new outside consultant, Michael Remsha, who had analyzed the values of CHS's properties for purposes of this action. Remsha opined that DOR had not taken into account all items of depreciation and obsolescence, resulting in an excessive assessment. Remsha further stated that he had identified sales of comparable refineries and used them to value the Laurel refinery, and that he also had identified applicable revenues, expenses, and capitalization and discount rates to appraise the refinery under the income approach.

¶14 Following briefing and a hearing, the District Court granted summary judgment for DOR as to all of the CHS claims. The court determined that DOR had established the nonexistence of material facts as to the illegality of the tax imposed on CHS, and that CHS then had failed to meet its burden of presenting evidence that the method or procedure of assessment was illegal or improper. The court ruled that Remsha's affidavit went to valuation, and not to illegal taxation. The court deferred to the appropriate tax appeal boards the merits of the equalization argument, and it ruled that CHS had established no prejudice as a result of the "late" assessment notice in 2009.

5

**STANDARDS OF REVIEW**

¶15    We review de novo a district court's grant of summary judgment. *In re Estate of Harmon*, 2011 MT 84, ¶ 14, 360 Mont. 150, 253 P.3d 821.  In so doing, we apply the same standards used by the district court under M. R. Civ. P. 56:  summary judgment should be rendered if the pleadings, discovery, and other materials on file with the court establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

¶16    The interpretation and application of a statute to a particular set of circumstances are questions of law subject to de novo review for correctness. *Ramsey v. Yellowstone Neurosurgical Assocs.*, 2005 MT 317, ¶ 18, 329 Mont. 489, 125 P.3d 1091.

**DISCUSSION**

¶17    Issue One:  Is the CHS challenge to the methods and procedures of assessment used by DOR to assess CHS's property within the scope of declaratory judgment actions that may be brought directly in a Montana district court under § 15-1-406, MCA, without first appealing to administrative tax appeals boards?

¶18    As indicated above, § 15-1-406, MCA, allows an aggrieved taxpayer to bring a declaratory judgment action seeking a declaration that a "method or procedure of assessment" is "illegal or improper."  Section 15-1-406(4)(a), MCA, further provides that:

> The remedy authorized by this section may not be used to challenge the . . . market value of property under a property tax unless the challenge is to the legality of a particular methodology that is being applied to similarly situated taxpayers[.]

The parties agree that *Albright v. State*, 281 Mont. 196, 933 P.2d 815 (1997), is the foundation for discussion of which "methods or procedures of assessment" may be

6

challenged directly in a district court under § 15-1-406, MCA.

¶19     *Albright* was a challenge to the constitutionality of the statewide reappraisal of all residential and commercial property in Montana between 1987 and 1992, pursuant to § 15-7-111, MCA.   The case involved application of two statutory requirements.  Section 15-8-111(1)-(2)(a), MCA, required that "[a]ll taxable property must be assessed at 100% of its market value except as otherwise provided.  Market value is the value at which property would change hands between a willing buyer and a willing seller[.]"  Section 15-7-112, MCA, required that "[t]he same method of appraisal and assessment shall be used in each county of the state to the end that comparable property with similar true market values and subject to taxation in Montana shall have substantially equal taxable values at the end of each cyclical revaluation program[.]"

¶20     In *Albright*, we concluded the legislature intended DOR to use both the cost approach and the market data approach to valuation of property, depending on the available market data.   We also concluded that DOR's use of various approaches to valuation does not contravene the mandate that appraisals be done by the same "method" statewide.

> [T]he term "method" refers to a consistent process for arriving at market value, the details of which may vary from place to place, depending on available data, and which will necessarily include a number of different approaches—*e.g*., the market data approach, the income approach, the cost approach—or some combination of these approaches, depending on the market in the area where appraisals occur.

*Albright*, 281 Mont. at 208-09, 933 P.2d at 823.  Ultimately, we concluded that DOR's market-based method utilizing a combination of approaches--the market data approach,

7

the income approach, and the cost approach--did not violate Article VIII, Section 3, of the Montana Constitution. We went on to advise property owners who feel that fair, accurate, and consistent valuations have not been achieved to avail themselves of the administrative property tax appeal process set forth at §§ 15-15-101 through -104, MCA. *Albright*, 281 Mont. at 213-14, 933 P.2d at 826.

¶21    Acknowledging that *Albright* is a controlling precedent, CHS relies on *Devoe v. Department of Revenue*, 263 Mont. 100, 866 P.2d 228 (1993), to argue that using the cost approach to valuation alone, without consideration of any market factors, is inadequate as a matter of law because it does not take into account market influences on property values. CHS also cites *Devoe* and *Albright* for the holding that DOR is obliged to assess property at 100% of its market value and that the courts have the power to determine whether the methods used by DOR are adequate to meet that obligation. CHS's position is that *Albright* and *Devoe* require that all three ways of determining market value--cost approach, income approach, and comparable sale or market data approach--can and should be used, depending on the context, rather than only the cost less depreciation approach.

¶22    "Depending on the context" is key. The clear language of *Albright* set forth above indicates that, while the "method" of appraisal requires consideration of more than one approach to valuation, use of these approaches may be limited by "available data" and the "market in the area where appraisals occur." *Albright*, 281 Mont. at 209, 933 P.2d at 823; *see also PacifiCorp v. State*, 2011 MT 93, ¶ 48, 360 Mont. 259, 253 P.3d 847.

¶23    CHS asserts repeatedly that it is not asking the courts to make detailed findings of valuation of its property, but instead is asking them to rule on how to assess property. But method of assessment necessarily varies with the situation. *See Albright* and *PacifiCorp*. Where, as here, the record reveals that the property owner is unwilling to provide DOR with income information, DOR will not be able to use the income approach. Where DOR is unable to locate comparable sales, and the property owner offers DOR no evidence of any, DOR will be unable to use the comparable sales or market data approach.

¶24    DOR appraiser Carlson stated in his affidavit to the District Court that he considered using an income approach to value in 2009 and 2010, and that he asked CHS for the type of information he needed to come up with a valuation using an income approach, and explained why it was necessary. CHS did not, however, provide the information necessary for Carlson to perform an income approach to value using generally acceptable appraisal principles.

¶25    Carlson further averred that he had tracked developments in the oil and gas industry and researched whether sales of comparable properties might have occurred during the relevant time period. In Carlson's opinion, there simply did not exist sufficiently comparable sales to calculate an opinion of value under that approach. Notably, CHS has not identified any particular sale that it believes should be considered under a market data approach.

¶26    As stated above, CHS presented to the District Court an affidavit of its appraisal expert Michael Remsha concerning the proper methods to insure that a refinery is

9

assessed properly at market value. CHS contends Remsha's affidavit states a valid challenge to the "method or procedure of assessment" under § 15-1-406(1)(a), MCA. The District Court, however, largely disregarded Remsha's affidavit, correctly concluding that "the only subject matter to which an expert appraiser may speak with any expertise are matters of valuation; not the legality or impropriety of the method under Montana law." And, to the extent that Remsha's affidavit contains opinions regarding valuation, those opinions are speculative and conclusory, such as "the Department of Revenue did not take into account all items of depreciation and obsolescence," and do not create a genuine issue of material fact to survive summary judgment.

¶27 CHS contends it is proper for a court to make a legal ruling on DOR's method of assessment. In *Department of Revenue v. Grouse Mountain Dev.*, 218 Mont. 353, 707 P.2d 1113 (1985), owners of golf course property near Whitefish, Montana, sought judicial review of STAB's valuation of their property. The only issue on review was whether a district court may reverse a STAB valuation determination if there was substantial evidence in the record to support STAB's decision. CHS states this Court did not defer to STAB's findings in *Grouse Mountain*, and gave no deference to its method of assessment. That is something of a misstatement. We did affirm the district court's finding, based on the administrative record, that STAB had abused its discretion in approving an appraisal based on a cost of replacement approach only, without consideration of the effect on the property's value of a public use restriction. But we also stated, "[t]ax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property, and the judiciary cannot properly

10

interfere with that function." *Grouse Mountain*, 218 Mont. at 355, 707 P.2d at 1115. Notably, we remanded the case to STAB with instructions. *Grouse Mountain*, 218 Mont. at 358, 707 P.2d at 1116.

¶28 In his affidavit, Remsha opined that the one method of assessment used by DOR was done improperly, because DOR failed to take into account all items of depreciation and obsolescence, resulting in an improper or illegal method of assessment. But § 15-8-111(2)(b), MCA, does not require DOR's appraisers to simply accept a taxpayer's assertions concerning depreciation or obsolescence. *See PacifiCorp,* ¶¶ 37-48.

¶29 CHS cites *PacifiCorp* and *Department of Revenue v. Burlington N., Inc.,* 169 Mont. 202, 545 P.2d 1083 (1976), for the proposition that "[a] taxpayer's right to submit new information on appeal is well-established." Those cases involved appeals of STAB decisions, and the reference was to STAB's statutory authority to hold a de novo hearing and receive new evidence. That procedural posture is very different from a declaratory judgment action such as this one.

¶30 This issue can be decided based on the undisputed material facts and the applicable law. Our review convinces us that DOR established that there are no genuine issues of material fact regarding illegal or improper methods or procedures of valuation. CHS did not meet its burden of establishing a genuine issue of material fact as to whether DOR used an illegal or improper method or procedure to assess CHS's property. The District Court was correct in ruling that CHS's claims of material issues of fact go to valuation, not illegal taxation, and thus must be raised in administrative proceedings.

11

¶31 Issue Two: Is the CHS claim that DOR violated state law when it failed to equalize its valuation of CHS's property with similar properties within the scope of declaratory judgment actions that may be brought directly in a Montana district court under § 15-1-406, MCA, without first appealing to administrative tax appeal boards?

¶32 Article VIII, Section 3, of the Montana Constitution requires the state of Montana to "appraise, assess, and equalize the valuation of all property which is to be taxed in the manner provided by law." CHS states DOR's appraised market value of CHS's refinery is higher than those of refineries owned by Phillips 66 and ExxonMobil in Yellowstone County. CHS cites *Department of Revenue v. State Tax Appeal Bd. (DOR v. STAB)*, 188 Mont. 244, 613 P.2d 691 (1980), for the idea that a taxpayer is entitled to relief if he can show that his property was assessed at a higher proportion of its actual value than the ratio existing between the assessed and actual valuations of similar and comparable properties.

¶33 *DOR v. STAB* involved a request for judicial review of a STAB decision. In that case, we adopted the six-factor "*Maxwell* test" as a basis for determining equalization among like properties. The factors are: (1) that there are other similar properties within a reasonable area; (2) the amount of assessments on those properties; (3) the actual values of those properties; (4) the actual value of the subject property; (5) the assessment complained of; and (6) by comparison, the subject property is assessed at a higher portion of its actual value than the ratio existing between the assessed and actual values of the similar properties. The *Maxwell* test thus requires several valuation-related findings of fact. In *DOR v. STAB*, we remanded to allow the state tax appeal board to hold a hearing at which evidence of the true and assessed values of commercial and residential property

12

could be introduced. We also noted that the burden is on the taxpayer to establish DOR's failure to equalize. *DOR v. STAB*, 188 Mont. at 250, 613 P.2d at 694.

¶34 The affidavit filed by DOR appraiser Carlson in the present case states Carlson relied on the cost approach to estimating value, in an identical manner for the three Yellowstone County refineries. DOR thus established its entitlement to judgment as a matter of law on the equalization question; according to the affidavit, each was treated the same. At that point CHS was required to meet its burden of establishing a genuine issue of material fact as to whether DOR acted illegally or improperly by failing to equalize its valuation of CHS's property with similar properties. CHS's submission of Remsha's affidavit, with a conclusory statement that DOR failed to equalize, did not suffice to meet CHS's burden of establishing a genuine issue of material fact.

¶35 Thus, we conclude the District Court was correct in granting DOR summary judgment on this claim, which was not within the scope of a declaratory judgment action.

¶36 Issue Three: Was DOR's assessment of CHS's property made too late for tax year 2009?

¶37 Section 15-8-201(1), MCA, provides that, "between January 1 and the first Monday of August in each year, [DOR shall] ascertain the names of all taxable inhabitants and assess all property subject to taxation in each county." The third claim in CHS's complaint for declaratory judgment is that DOR's 2009 assessment of its property was not timely.

¶38 In *Albright*, 281 Mont. at 218, 933 P.2d at 829, we ruled that a statutory requirement that property be "assessed" by a date certain did not equate to a requirement

13

that assessment notices be sent out by the date specified. The statutory language has been amended since our *Albright* decision, but a requirement that property be "assessed" by a date certain remains. *See* § 15-8-201(1), MCA.

¶39 In the present case, the District Court ruled that "there still remains no evidence that DOR failed to 'assess' CHS's property by the statutorily prescribed deadline." As CHS points out, however, DOR appraiser Carlson admitted by affidavit that DOR's 2009 assessment occurred shortly after the first Monday in August. Thus, the situation here is a step beyond that presented in *Albright*.

¶40 In applying the date certain requirement to the circumstances of this case, we observe the rule that we must adopt a statutory construction, if possible, that will give effect to all statutes the legislature has enacted on the subject. *See* § 1-2-101, MCA. We observe that §§ 15-7-102 (appeals) and 15-8-601 (assessment revision), MCA, address situations in which DOR is required to issue assessments after the conclusion of events that fall after the first Monday in August. Nothing in § 15-8-201, MCA, explicitly or implicitly grants an extension of time to accommodate revised assessments that must issue at the conclusion of revision or appeals under §§ 15-7-102 or 15-8-601, MCA. Yet CHS is not arguing that those assessments are invalid.

¶41 In addition, § 15-8-308, MCA, provides that "[n]o assessment . . . is illegal . . . because the same was not completed within the time required by law." CHS says this statute applies only to DOR's internal deadlines, not to substantive statutory deadlines. But the language of § 15-8-308, MCA, contains no such limitation. In addition, we observe that, for the year 2009, Chapter No. 483, Section 12, L. 2009, provided that "[a]s

14

a result of the changes . . . it may not be possible to comply with certain statutory deadlines relating to appraisals . . . . Therefore, for tax year 2009, all deadlines are extended as necessary and reasonable . . . ."

¶42 Finally, CHS claims DOR's reasons for missing the statutory assessment deadline raise issues of fact, and therefore summary judgment on this issue was improper. But *Albright* created a prejudice test for invalidating a "late" assessment: absent the possibility that a late assessment may impede a taxpayer's ability to appeal a changed property valuation, missing the statutory deadline does not render those assessments invalid. *See Albright*, 281 Mont. at 217-18, 933 P.2d at 828-29. In the present case, as the District Court noted, CHS has raised no genuine issues of material fact that would demonstrate any prejudice it has suffered as a result of the assessment notice being issued to it on August 22 instead of by the first Monday in August in 2009.

¶43 We conclude the District Court did not err when it granted DOR summary judgment on CHS's claim that the 2009 assessment of its property was "illegal or improper" because it was not completed by the first Monday in August of that year.

## CONCLUSION

¶44 The CHS challenges to the methods and procedures of assessment used by DOR to assess CHS's property must be raised through the administrative tax appeal process. Similarly, the CHS claim that DOR failed to equalize its valuation of CHS's property is the type of challenge that must be pursued administratively. As a result, the District Court did not err in granting DOR summary judgment on those claims. Finally, the court did not err when it granted DOR summary judgment on the CHS claim that the 2009

15

assessment of its property was illegal or improper because it was "late."

¶45    Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER