DA 12-0253

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 280

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TERRY DUANE PARKS,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DC-10-371<br>Honorable Karen S. Townsend, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Robin A. Meguire, Meguirelaw.com; Great Falls, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Katie F. Schulz, Assistant Attorney General; Helena, Montana

          Fred R. Van Valkenburg, Missoula County Attorney; Missoula, Montana

          Jesse Laslovich, Special Assistant Attorney General; Montana State Auditor's Office; Helena, Montana

Submitted on Briefs:  September 4, 2013

Decided:   September 25, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    The State of Montana charged Terry Duane Parks in the Fourth Judicial District Court, Missoula County, with three counts of omitting material facts relating to his offer and sale of a security, in violation of § 30-10-301(1)(b), MCA. The jury found Parks guilty on all three counts. Parks now appeals.

¶2    We address the following issue on appeal: Whether § 46-11-410, MCA, precludes Parks' convictions on two of the three counts with which he was charged. We answer this question in the affirmative and, therefore, remand this case to the District Court with instructions as specified below. Parks raises two other issues on appeal; however, we do not address those issues for the reasons explained below.

## BACKGROUND

¶3    The evidence presented at trial reflected the following facts. In 2007, Parks was involved in various rebuilding projects in the Gulf Coast area after Hurricane Katrina. Parks testified that banks were not lending in that area due to uncertainty, and so private funds were being sought for loans secured by real estate. To that end, Parks placed an advertisement in the *Missoulian* soliciting funds to facilitate the rebuilding projects. The advertisement appeared on March 30, 2007, in the Classified section of the *Missoulian* under the heading "Investments." It stated:

> 24% well-secured fixed
> 1 yr. yield w/ Go Zone
>  trusts.  Help rebuild
> booming Gulf Coasts.
> Terry, [phone number]

Parks explained at trial that "Go Zone" refers to Gulf Opportunity Zone.

2

¶4     Rece Cobeen, a gentleman from Plains, Montana, noticed the advertisement.  He testified that what drew his attention was the 24 percent rate of return, the fact that it was "well-secured," and "it sounded like it would be . . . a good moneymaking opportunity."  Cobeen contacted Parks at the listed phone number.  During their initial conversation, Parks explained that the one-year yield referenced in the advertisement involved "very large loans" secured by "multi-million dollar properties."  Cobeen did not have sufficient funds for these large loans, but was willing to invest smaller amounts.  Parks testified that he told Cobeen "any smaller amounts of money would be used for . . . general business purposes . . . .  It would probably be diversified over several projects."

¶5     Cobeen asked Parks whether he had any references.  Parks provided the name of an individual, Patrick Rummel, in Plains.  Cobeen spoke with Rummel a few days later, received a "solid" reference regarding Parks, and then called Parks a second time.  In this second conversation, Cobeen indicated that he wanted to invest $10,000.  Parks reiterated that the one-year loans referenced in the advertisement were not available to Cobeen.  He told Cobeen that the smaller, $10,000 loan would be at an annual rate of 24 percent, but on a five-year term.  Parks asked Cobeen to wire the money to a bank in Missoula; however, Cobeen preferred to send a cashier's check.  Parks told Cobeen to make the check out to "Tower Trust Two."  Parks was the trustee of Tower Trust Two.

¶6     Cobeen sent Parks a cashier's check for $10,000 dated April 19, 2007.  In return, Parks sent Cobeen a document titled "Business Purpose Note," which stated:

> On this date, for an [sic] consideration of a private business purpose loan, the undersigned MAKER, Tower Trust Two, a Nevada private trust, [mailing address], promises to pay to Rece Cobeen, [mailing address], or

order, PAYEE, principal in the amount of TEN THOUSAND DOLLARS ($10,000.00), plus accrued interest to the date of payment.

This note shall bear interest at the rate of TWENTY-FOUR PERCENT PER ANNUM (24%), compounded annually. Interest shall accrue and compound until paid with the principal due.

This note shall be due and payable in full, including all interest accrued, on April 16, 2012. It may be paid in part or in full before its due date without penalty.

If any action shall be required under law to collect this note, the MAKER agrees to pay all reasonable costs associated with said collection action, including reasonable attorney fees, if any.

This note is the liability of Tower Trust Two only, and not that of any individual person.

Made this 16th day of April, 2007.

[Parks' signature]

¶7 Several months later, Cobeen called Parks on his own initiative and indicated that he wanted to invest more money. Cobeen did not make any further inquiries about the nature of the investment, and Parks did not provide any additional information. Cobeen sent Parks a cashier's check for $35,000 dated August 27, 2007, and made out to Tower Trust Two. Parks, correspondingly, sent Cobeen another Business Purpose Note dated August 28, 2007, containing identical terms as the Business Purpose Note quoted above, except the amount was $35,000 and the due date was August 28, 2012.

¶8 Cobeen sent Parks two more checks, each for $5,000. In both instances, Cobeen sent the checks without contacting Parks first; he assumed the money would be invested the same way as his previous contributions. Both checks were made out, as before, to Tower Trust Two. Parks, in return, sent Cobeen two additional Business Purpose Notes,

4

the first dated February 15, 2008, and the second dated July 15, 2008. The terms of these notes were the same as the two Business Purpose Notes issued in 2007, except that the duration of the $5,000 loans was four years rather than five.

¶9 At no point during their discussions did Parks state that he was a securities broker. In fact, Parks is not a securities broker and he is not licensed to offer or sell securities in Montana. Moreover, at no point did Parks tell Cobeen that the Business Purpose Notes were securities registered with the State. The notes, in fact, were not registered with the State. Lastly, Parks never provided Cobeen with any kind of prospectus or disclosure documentation regarding Tower Trust Two and the Business Purpose Notes.

¶10 After his final contribution in July 2008, Cobeen began to think that 24 percent was "a ridiculously high amount," so he contacted Parks and "asked to take my money out." Other than a $400 interest payment in June 2007, however, Cobeen never received any money from Parks. Cobeen then filed a complaint with the Office of the Commissioner of Securities and Insurance (CSI). Following an investigation, the State filed an Information, then an Amended Information, charging Parks with three violations of § 30-10-301(1)(b), MCA. This statute states:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, in, into, or from this state, to . . . make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Section 30-10-301(1)(b), MCA (paragraph breaks omitted). The State alleged that Parks violated this statute, "on or about April 2007 through July 2008," in three ways:

5

Count Two.[1]    Parks "made untrue statements or omitted material facts when he failed to inform [Cobeen] that he was not registered to offer or sell securities in Montana."

Count Three.    Parks "made untrue statements or omitted material facts when he failed to inform [Cobeen] that Tower Trust Two had not registered its securities in the state of Montana, nor had it applied for any type of an exemption from registration."

Count Four.    Parks "made untrue statements or omitted material facts by failing to provide [Cobeen] with any disclosure information regarding his investments in Tower Trust Two 'Business Purpose Notes.' "

¶11 At trial, the prosecution called Lynne Egan, the Deputy Securities Commissioner with CSI. Among other things, Egan testified regarding three essential requirements of securities transactions in Montana. First, a person may not transact business in this State as a broker-dealer or salesperson unless the person is registered under the Securities Act of Montana. Section 30-10-201(1), MCA. The registration requirement is designed to ensure that individuals who are assisting people in the management of their money have the requisite knowledge and skill and are familiar with the applicable laws. *Knowles v. State ex rel. Lindeen*, 2009 MT 415, ¶ 5, 353 Mont. 507, 222 P.3d 595. Egan explained that broker-dealers and salespersons "have a duty to know their client [and] to only make recommendations to that client that are suitable for that client based on a thorough review of their financial background, their level of sophistication, their age, their liquidity needs, their risk tolerance and their investment objectives, and any other information that may be relevant to the transaction."

¶12 Second, a person may not offer or sell a security in this State unless the security is registered under the Securities Act. Section 30-10-202, MCA. Egan explained that

---

[1] Count One was a theft charge, which the District Court dismissed before trial.

registering a security requires the filing of various documents, including audited financial statements, a copy of the prospectus, an opinion from an attorney attesting that the issuer can legally offer the security, a list of risk factors associated with the offering, and a description of the type of investment opportunity, whether an equity investment or a debt offering. CSI reviews the documents to ensure that the information is correct and that it would be in the public's interest to allow the registration to proceed. The registration process, Egan summarized, is designed "to protect investors and make sure that there's transparency in the securities transaction."

¶13 Finally, Egan testified that, as part of an investment transaction, the issuer (i.e., the person or entity offering the investment opportunity) "must make full and complete disclosure to investors of all material information that an investor would need to make an informed investment decision." *See* § 30-10-301(1)(b), MCA. Egan explained that such disclosures are generally made through a prospectus, which should be delivered to the investor before the investment "[s]o the investor is informed about what it is they are investing in." Egan noted that there is no one set of material facts for each offering; "[i]t's on a case-by-case basis what must be included" in the disclosure.

¶14 Turning to the present case, it was Egan's opinion that the dealings between Parks and Cobeen came within the purview of the Securities Act. Egan explained that the Business Purpose Notes showed that Cobeen had lent money to Parks in exchange for a 24 percent rate of return in Tower Trust Two with an expectation of profit. Egan posited that the Business Purpose Notes were "an investment contract, a note, or any evidence of indebtedness," all of which are included in the definition of a "security" in the Securities

7

Act.[2]  *See* § 30-10-103(22)(a), MCA.  In this connection, Egan explained that a "debt offering" is "a securities offering where the investor becomes a creditor of the issuer, instead of an owner of the issuer."  The investor "lends their money to the issuer to meet some type of objective, whatever the issuer intends, as long as it's disclosed to the investor, and then the issuer pays the investor back at a set date with a set rate of return."  Egan indicated that the Business Purpose Notes were securities of this type.

¶15  Besides Egan, the State's only other witness was Cobeen, who testified about his prior investment experience and his interactions with Parks.  Under cross-examination, Cobeen admitted that he knew his money would be used for various business purposes, possibly in Missoula or in the Gulf Coast region.  Cobeen further admitted that he had continued to send Parks money because he thought it was "a good deal."

¶16  The defense's only witness was Parks himself.  He acknowledged that he was not registered to offer or sell securities and that the Business Purpose Notes were not registered as securities.  Parks also acknowledged that he did not apprise Cobeen of these facts and that he did not provide Cobeen with a prospectus.  Parks explained that he had believed the Business Purpose Notes were "business loans," not "securities."

¶17  In closing argument, Parks' counsel conceded the three alleged omissions—i.e., that Parks did not tell Cobeen he was not registered; that Parks did not tell Cobeen the

---

[2] As we have noted, the Securities Act defines "security" quite broadly so as to encompass virtually any instrument that might be sold as an investment. *Redding v. First Jud. Dist. Ct.*, 2012 MT 144A, ¶ 24, 365 Mont. 316, 281 P.3d 189.  "Such a broad definition is in harmony with federal securities law, which recognizes the virtually limitless scope of human ingenuity, especially in the creation of countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Redding*, ¶ 24 (internal quotation marks omitted).

Business Purpose Notes were not registered; and that Parks did not provide Cobeen a prospectus. Counsel also conceded tacitly, if not outright, that the Business Purpose Notes were securities.[3] The crux of the dispute, therefore, centered on whether Parks' omissions were "material" and "misleading." In this regard, the District Court instructed the jury that "[a]n omitted fact is material if there is substantial likelihood that a reasonable investor would consider it important in deciding whether to invest."

¶18 The prosecution argued that, in deciding whether to invest, a reasonable investor would consider it important to know that neither Parks nor the Business Purposes Notes were registered, and would also consider it important to receive a prospectus explaining the nature of the investment. The defense, conversely, argued that these omissions did not make Parks' statements misleading. *See* § 30-10-301(1)(b), MCA ("It is unlawful . . . [to] omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."). Parks' counsel argued that Cobeen knew he was dealing with a private business person, not a broker, who would be using his money for various business purposes. Counsel argued that it was not misleading to omit the facts that Parks was not a registered broker-dealer and that the Notes were not registered securities. Counsel asserted that Cobeen understood the nature of the transaction, and he noted that Cobeen had never claimed Parks "misled" him.

¶19 The jury ultimately rejected Parks' contentions and found him guilty of the three omissions alleged by the State. Following the verdict, but before sentencing, Parks filed

---

[3] Counsel stated: "We would agree that the ad appears to be an offer and the offer for something that appears to be securities." Parks represents in his opening brief on appeal that his counsel also "implicitly conceded" that the Notes were securities during voir dire.

9

a motion arguing that under § 46-11-410, MCA, he could be convicted and sentenced on only one of the three counts. The District Court denied the motion on the ground that Parks had violated § 30-10-301(1)(b), MCA, "in three very separate ways." The court sentenced him to three consecutive ten-year terms at Montana State Prison, with the second and third terms suspended (hence, a total sentence of 30 years with 20 of those years suspended). Parks now appeals.

## STANDARD OF REVIEW

¶20 The interpretation and application of a statute to a particular set of circumstances are questions of law subject to de novo review for correctness. *CHS, Inc. v. Mont. Dept. of Revenue*, 2013 MT 100, ¶ 16, 369 Mont. 505, 299 P.3d 813.

## DISCUSSION

¶21 ***Does § 46-11-410, MCA, the multiple charges statute, preclude Parks' convictions on two of the three counts with which he was charged?***

¶22 Parks asserts that "double jeopardy" protections required the District Court to convict and sentence him on only one count of securities fraud. Yet, while Parks cites the Double Jeopardy provisions of both the United States Constitution and the Montana Constitution, he provides no distinct constitutional analysis. Rather, the substance of his argument is based on the multiple charges statute, § 46-11-410, MCA. Confusion may have arisen because some of our cases refer to this statute as providing "double jeopardy" protections. *See e.g. State v. Geren*, 2012 MT 307, ¶ 24, 367 Mont. 437, 291 P.3d 1144; *State v. Weatherell*, 2010 MT 37, ¶ 11, 355 Mont. 230, 225 P.3d 1256; *State v. Hamilton*, 2007 MT 223, ¶ 40, 339 Mont. 92, 167 P.3d 906; *State v. Becker*, 2005 MT 75, ¶ 15, 326

Mont. 364, 110 P.3d 1; *see also* § 46-13-110(3)(b), MCA.  Despite that characterization, however, we do not consider constitutional double jeopardy principles in resolving the instant issue.  We simply apply the multiple charges statute pursuant to its language.

¶23    The multiple charges statute provides, in pertinent part:

> **Multiple charges.**  (1) When the *same transaction* may establish the commission of more than one offense, a person charged with the conduct may be *prosecuted* for each offense.
> (2) A defendant may not, however, be *convicted* of more than one offense if:
> (a) one offense is *included* in the other; . . . .

Section 46-11-410, MCA (emphases added).

¶24    The first question is whether Parks' offenses were part of the "same transaction" under subsection (1) of the statute.  This term is defined as follows:

> "Same transaction" means conduct consisting of a series of acts or omissions that are motivated by:
> (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or
> (b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

Section 46-1-202(23), MCA.

¶25    Here, Parks' omissions arguably satisfy both definitions.  Under subsection (a), his series of omissions were motivated by a purpose to accomplish a criminal objective—namely, to obtain investments from Cobeen in Tower Trust Two without full disclosure of all material facts—and were necessary or incidental to the accomplishment of that objective.  Under subsection (b), his series of omissions were motivated by a common purpose or plan (to obtain investments in Tower Trust Two without full disclosure of all

11

material facts) that resulted in the repeated effect upon the same person or the property of the same person—namely, Cobeen's repeated submission of checks to Tower Trust Two.

¶26 In responding to Parks' motion under the multiple charges statute in the District Court, the State relied on *State v. Goodenough*, 2010 MT 247, 358 Mont. 219, 245 P.3d 14. The defendant there had been convicted of sexual assault and sexual intercourse without consent, as well as incest. We acknowledged, based on prior precedent, that sexual assault is "included" in sexual intercourse without consent. *Goodenough*, ¶ 16 (citing *State v. Williams*, 2010 MT 58, ¶ 28, 355 Mont. 354, 228 P.3d 1127). We thus focused on whether the defendant's offenses were part of the "same transaction." We concluded they were not. Whereas the crimes in *Williams* arose from the same attack, we observed that the charges and evidence against Goodenough established "distinct criminal events." In fact, Goodenough had conceded in his briefs on appeal that his offenses against his granddaughter involved multiple incidents occurring on different days over the alleged time period. *Goodenough*, ¶¶ 16-18.

¶27 The present case is distinguishable from *Goodenough*. Cobeen telephoned Parks after seeing the advertisement in the *Missoulian*. Cobeen and Parks spoke generally about the advertisement, and Cobeen requested a reference. A few days later, Cobeen called back and indicated that he wanted to invest. Parks told Cobeen that the money would be used for general business purposes, possibly in Missoula or in the Gulf Coast region. Cobeen mailed the first check to Parks and then, on his own initiative, mailed three more checks. Cobeen did not make any further inquiries about the nature of the investment, and Parks did not provide any additional information. Cobeen assumed with

each check he sent that his money would be invested as he and Parks had discussed in their two preliminary conversations. Hence, this is not a case like *Goodenough* where there were multiple incidents on different days over the alleged time period. True, the State alleged that Parks' omissions occurred "on or about April 2007 through July 2008." However, Cobeen's decision was based on the specifics that Parks had provided in the initial phone conversations. Parks' omissions occurred during those initial conversations, and they all concerned the same investment. The omissions—failing to tell Cobeen that he was not registered, failing to tell Cobeen that Tower Trust Two's Business Purpose Notes were not registered, and failing to provide Cobeen a prospectus—thus arose from the "same transaction."[4] Section 46-11-410(1), MCA.

¶28    The next question is whether these offenses were "included" in each other. *See* § 46-11-410(2)(a), MCA. "Included offense" means an offense that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 46-1-202(9)(a), MCA. The State argues that Parks could be convicted of all three counts of securities fraud because each count is "factually distinct": Parks did not tell Cobeen that he was not registered (Count Two); Parks did not tell Cobeen that the securities were not registered (Count Three); and Parks did not provide Cobeen any disclosure information regarding his investments in Tower Trust Two (Count

---

[4] We note, in addition, that the prosecution did not charge Parks with separate violations of § 30-10-201(1), MCA, which makes it unlawful for a person to transact business in this State as a broker-dealer or salesperson unless the person is registered, and § 30-10-202(1), MCA, which makes it unlawful for a person to offer or sell a security in this State unless the security is registered. Such separate charges would make this a different case. However, the prosecution instead charged three omissions of material fact under § 30-10-301(1)(b), MCA. And, for the reasons just discussed, these omissions arose from the "same transaction" under §§ 46-1-202(23) and 46-11-410(1), MCA.

Four). The District Court, likewise, reasoned that Parks had violated § 30-10-301(1)(b), MCA, "in three very separate ways."

¶29 This Court, however, has rejected the notion of analyzing § 46-1-202(9)(a), MCA, based on the facts of the individual case. In *State v. Beavers*, 1999 MT 260, 296 Mont. 340, 987 P.2d 371, the defendant argued that reckless driving is an included offense of criminal endangerment when criminal endangerment is used to prosecute individuals for a driving offense. The State, on the other hand, argued that since the elements of the two offenses are different, they are not included offenses. We agreed with the State, noting that we have consistently stated that the term "facts," as used in § 46-1-202(9)(a), MCA, "refers to *the statutory elements* of the offenses, not the individual facts of the case." *Beavers*, ¶¶ 28-30 (emphasis added); *accord State v. Matt*, 2005 MT 9, ¶¶ 13-14, 325 Mont. 340, 106 P.3d 530; *Williams*, ¶ 21.

¶30 Here, it is plain that "the statutory elements" of Counts Two, Three, and Four are exactly the same. Indeed, the State alleged exactly the same statutory elements for each of the three counts in the Amended Information: "That at the time and place mentioned above, the Defendant, while offering the sale of a security, directly and/or indirectly made untrue statements of a material fact and/or omitted to state a material fact." Under *Beavers* and § 46-1-202(9)(a), MCA, Counts Two, Three, and Four are "included" in each other.

¶31 Based on the foregoing analysis, the State's assertion in its brief on appeal that "each count had a different element" is incorrect. Each count had the same *statutory element*: omission of a material fact. Thus, they are included offenses. Further, as

14

discussed, the offenses arose from the same transaction. Accordingly, the District Court should have granted Parks' motion under § 46-11-410, MCA, vacated his convictions on two of the offenses, and sentenced him on only one of the three counts.

**ADDITIONAL ISSUES**

¶32 Parks raises two other issues on appeal. We note those issues here, but do not consider them on the merits for the reasons stated below.

¶33 First, although couched as a "sufficiency of the evidence" claim, Parks argues that he could not be convicted of the charges because the Business Purpose Notes were not "securities." As noted, however, Parks conceded in the District Court—tacitly, if not outright—that the Notes were securities. Also, he did not provide any expert testimony to rebut Egan's opinion that the Notes were securities. As a result, Parks' argument is not properly before us. *See State v. Claassen*, 2012 MT 313, ¶ 19, 367 Mont. 478, 291 P.3d 1176; *State v. Smith*, 2005 MT 18, ¶ 10, 325 Mont. 374, 106 P.3d 553.

¶34 Parks further contends that the definition of "security" is unconstitutionally vague. He asserts that he preserved this claim through a post-trial motion for a new trial, which he filed personally. We note, however, that this motion contains no legal analysis, with citations to supporting authority, on the vagueness issue. Moreover, the District Court struck the motion from the record on the ground that Parks was represented by counsel at the time and, thus, he "should discuss any motions with his counsel." Alternatively, Parks suggests that we may review his vagueness claim under our plain error doctrine. We decline to do so. On the specific facts of this case, and in light of our recognition in *Redding* that "security" was intentionally defined broadly in the Securities Act to

encompass virtually any instrument that might be sold as an investment (*see* ¶ 14 n. 2, *supra*), we are not "firmly convinced" that failing to review Parks' claim would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial, or compromise the integrity of the judicial process. *State v. Norman*, 2010 MT 253, ¶¶ 17-18, 358 Mont. 252, 244 P.3d 737; *see also State v. Daniels*, 2003 MT 247, ¶ 28, 317 Mont. 331, 77 P.3d 224 (we need not present a full analysis whenever a party requests review under the plain error doctrine, as doing so "would defeat the rule requiring an argument to be preserved for appeal and would allow a party to make virtually any argument on appeal").

¶35 Second, the other issue Parks raises on appeal is that his trial counsel provided constitutionally deficient representation. Parks alleges "numerous ways" in which his counsel was ineffective: failing to argue that the loans were void based on their usury rate; failing to argue that the Business Purpose Notes did not qualify as securities; failing to distinguish Parks' personal liability from that of Tower Trust Two; failing to challenge the constitutionality of the controlling statutes as void for vagueness; failing to object to the strict liability nature of the offense; failing to object to Egan's opinion that the Business Purpose Notes qualified as securities; and failing to present an expert witness to rebut Egan's testimony. The standard for reviewing these claims is whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances. *Whitlow v. State*, 2008 MT 140, ¶ 20, 343 Mont. 90, 183 P.3d 861. The record presently before us is insufficient for applying this standard to counsel's challenged conduct. The record does not reveal

"why" counsel did or did not perform as alleged. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095; *State v. Briscoe*, 2012 MT 152, ¶ 10, 365 Mont. 383, 282 P.3d 657. And we are not persuaded by Parks' assertion that "no plausible justification" exists to justify counsel's action or inaction. *Kougl*, ¶¶ 15-17; *Briscoe*, ¶ 10. Accordingly, we dismiss without prejudice Parks' ineffective assistance of counsel claim and allow him to raise the claim in a petition for postconviction relief. *Norman*, ¶ 20.

## CONCLUSION

¶36 The District Court's judgment is affirmed as to one of Parks' convictions of violating § 30-10-301(1)(b), MCA, and is reversed as to his other two convictions of violating this statute. We remand with instructions to vacate two of Parks' convictions and corresponding sentences. Given this holding, and recognizing that the District Court may have fashioned a different sentence had it correctly sentenced Parks based on only one conviction, we hold that the District Court, after such further proceedings as it deems appropriate and consideration of the relevant facts and circumstances, may resentence Parks on the one conviction. *Cf. State v. Petersen*, 2011 MT 22, ¶¶ 15-17, 359 Mont. 200, 247 P.3d 731. We deny review of Parks' unpreserved claims, and we dismiss without prejudice his claims of ineffective assistance of counsel.

¶37 Affirmed in part, reversed in part, and remanded with instructions.


/S/ LAURIE McKINNON

17

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE


Justice Patricia O. Cotter concurs.

¶38    I concur in the Court's Opinion.  I write separately to address an additional concern with respect to the propriety of Park's convictions.

¶39    Prior to trial, the State argued to the District Court that because the statute under which Parks was charged did not contain the internal requirement of a mental state as an element of the crime, it was an "absolute liability" crime, citing § 45-2-104, MCA.  This statute provides:

> A person may be guilty of an offense without having, as to each element of the offense, one of the mental states of knowingly, negligently, or purposely only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described.

The State argued to the Court that § 30-10-301, MCA, clearly indicated a legislative intent to impose absolute liability, and therefore, the requisites of § 45-2-104, MCA, were satisfied.  I disagree.

¶40    The Legislature knows how to craft a statute so as to make it clear that it intends a statute to impose absolute liability for the conduct described.   For example, § 61-8-401(7), MCA, which addresses the offense of driving under the influence of

18

alcohol or drugs, provides: "Absolute liability as provided in 45-2-104 will be imposed for a violation of this section." The intent to impose absolute liability is expressly stated. By contrast, there is no language in § 30-10-301, MCA, that gives any indication that the offense is intended to be an absolute liability offense. I would therefore conclude that the statute does not clearly indicate a legislative purpose to impose absolute liability for the conduct therein described, as § 45-2-104, MCA, requires.

¶41 I would further conclude that because the State took the position that § 30-10-301, MCA, sets forth an absolute liability offense, it would be compelled under the foregoing analysis to limit its prosecution to an offense that would be punishable by a fine not exceeding $500. Section 45-2-104, MCA. Clearly, the prosecution here greatly exceeded this limitation.

¶42 Because this argument was not presented to the District Court, I would not urge reversal of the defendant's conviction on this premise. I write only to suggest that future felony prosecutions under § 30-10-301, MCA, could well face a viable challenge on these grounds.

¶43 I therefore concur.

/S/ PATRICIA COTTER

19